# 23-1162

## United States Court of Appeals for the Second Circuit

National Association for Gun Rights, Toni Theresa Spera Flanigan,

*Plaintiffs-Appellants*

Patricia Brought,

*Plaintiff,*

v.

Ned Lamont, in his official capacity as the Governor of the State of Connecticut, Patrick J. Griffin, in his official capacity as the Chief States Attorney of the State of Connecticut, Sharmese L. Walcott, in her official capacity as the State's Attorney, Hartford Judicial District,

*Defendants-Appellees,*

David R. Shannon, in his official capacity as the State's Attorney, Lichfield Judicial District,

*Defendant.*

### On Appeal from the United States District Court for the District of Connecticut (New Haven), No. 22-cv-1118

### BRIEF OF *AMICI CURIAE* MARK BARDEN, JACQUELINE BARDEN, JENNIFER HENSEL, DAVID WHEELER, FRANCINE WHEELER, ROBERT PARKER, ALISSA PARKER, JILLIAN SOTO-MARINO, CARLOS MATHEW SOTO, DONNA SOTO, CARLEE SOTO PARISI, NICOLE HOCKLEY, AND IAN HOCKLEY IN SUPPORT OF THE DEFENDANTS-APPELLEES AND AFFIRMANCE

Dated: July 26, 2024

Alinor C. Sterling
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
(203) 336-4421
asterling@koskoff.com
Fed. Bar No. ct17207
*Counsel for Amici Curiae*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................iii

STATEMENT OF INTEREST OF *AMICI CURIAE* ...............................1

SUMMARY OF ARGUMENT ...............................................................3

ARGUMENT ........................................................................................5

    NO MORE LIVES SHOULD BE LOST TO MASS
    SHOOTINGS IN CONNECTICUT .......................................................5

    I.    THE SANDY HOOK SHOOTER'S LEGAL ACCESS TO AN
        AR-15 STYLE ASSAULT RIFLE AND LARGE CAPACITY
        MAGAZINES ENABLED HIM TO KILL TWENTY CHILDREN
        AND SIX EDUCATORS IN UNDER FIVE MINUTES ...........................7

    II.   NO ONE CAN BRING BACK THOSE LOST AT SANDY HOOK .....10

        Victoria Soto ...............................................................................11

        Daniel Barden ..............................................................................12

        Dylan Hockley ............................................................................13

        Avielle Richman ..........................................................................14

        Emilie Parker ..............................................................................15

        Benjamin Wheeler .......................................................................16

    III.  THERE SHOULD BE NO NEXT TIME .........................................17

CONCLUSION ....................................................................................18

CERTIFICATE OF COMPLIANCE .....................................................20

i

CERTIFICATION OF SERVICE .............................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020) ......................................................3

**Statutes**

Conn. Gen. Stat. § 53-202a ................................................................................2, 8

Conn. Gen. Stat. § 53-202b................................................................................8

Conn. Gen. Stat. § 53-202c................................................................................8

Conn. Gen. Stat. § 52-202w................................................................................8

## STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are family members of children and educators killed in the Sandy Hook Elementary School Shooting on December 14, 2012.

*Amici* Carlee Soto Parisi, Jillian Soto-Marino, and Carlos Mathew Soto are the siblings of first-grade teacher Victoria Leigh Soto. *Amica* Donna Soto is Vicki Soto's mother.

*Amici* Jacqueline and Mark Barden are the parents of first-grader Daniel Gerard Barden.

*Amica* Jennifer Hensel is the mother of first-grader Avielle Rose Richman. Avielle's father is deceased.

*Amici* Alissa and Robert Parker are the parents of first-grader Emilie Alice Parker.

*Amici* Nicole Hockley and Ian Hockley are the parents of first-grader Dylan Christopher Jack Hockley.

*Amici* David and Francine Wheeler are the parents of first-grader Benjamin Andrew Wheeler.

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E) and Second Circuit Local Rule 29.1(b), *amici curiae* certify that a party's counsel did not author this brief in whole or in part; a party or a party's counsel did not contribute money that was intended to fund preparing or submitting the brief; and no person – other than the above-listed *amici curiae* or their counsel – contributed money that was intended to fund preparing or submitting the brief.

*Amici* seek to protect Connecticut families from becoming casualties in another assault weapon killing spree. Connecticut's restrictions on assault weapons and large capacity magazines (LCMs), Conn. Gen. Stats. §§ 53-202a *et seq*., are crucial to that purpose.

## SUMMARY OF ARGUMENT

In order to prevail below, the Plaintiffs were required to show "irreparable harm absent injunctive relief" and "public interest weighing in favor of granting the injunction." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). Neither showing is possible. The relief Plaintiffs seek would endanger everyone in Connecticut.

Connecticut suffered irreparable harm at Sandy Hook Elementary School on December 14, 2012. The assault rifle and thirty-round magazines that enabled the shooter to kill twenty-six people in under five minutes were purchased legally. It was *easy* for the shooter to obtain this lethal technology. After the shooting, Connecticut's legislature took action. Connecticut's restrictions on the lethal technology the shooter used, Conn. Gen. Stats. §§ 53a-202a *et seq.*, are enacted to—and essential to—protect against another such shooting. Few statutes could be more directly in the public interest.

The twenty-six lives lost at Sandy Hook Elementary School cannot be restored. The faith of a community and a state in its peace and security cannot be re-made. All that can be done is to ensure that there is no next time. Connecticut's restrictions on assault weapons and LCMS do what can be done to make sure no more children, no more teachers, no more schools, no more parents, no more sisters and brothers suffer a loss like Sandy Hook. Plaintiffs' efforts to strike down

those laws defy Connecticut's fundamental duty to protect its citizens, especially its children, from mass shootings.[2]

---

[2] Not only is the frequency of mass shootings rising in America, the frequency of mass shootings in schools is rising. JA-216-JA-218, Donohue Decl. ¶¶ 49-50.

**ARGUMENT**

**NO MORE LIVES SHOULD BE LOST TO MASS SHOOTINGS IN CONNECTICUT**

The Armalite 15 assault rifle was made for the battlefield. Its design harnesses technology to kill. Every feature serves that purpose—ease of use and light weight, twenty-inch standard barrel length for high muzzle velocity and deadly accuracy, low recoil semi-automatic fire capability, ability to accept a thirty-round (or higher) external magazine of relatively small and lightweight bullets that themselves are designed for extreme velocity and lethality.[3] These design choices give a novice shooter the power to create a mass casualty event. Offspring of the military M-16, the AR-15 has the battlefield virtues of "phenomenal lethality," "increased ability to penetrate helmets and body armor" and "engineer[ing] to generate maximum wound effect."[4] Its semi-automatic fire mode is "the most important firing technique during fast-moving modern combat."[5] Teamed with large capacity magazines, fired in semi-automatic mode,

---

[3] JA214-216, JA224, JA241-JA243, Donohue Decl. ¶¶ 44, 48, 65-66, 103-110.
[4] Plaintiffs' Special Appendix (SPA) at 48-49, Decision on Pl. Motion for Prelim. Injunction, at 48-49 (quoting Donohue Decl. ¶¶ 103-06, 109).
[5] SPA-49, Decision on Pl. Motion for Prelim. Injunction at 49 (quoting Donohue Decl. ¶ 107.)

these weapons unleash torrents of bullets in a matter of seconds. The bullets shred

organs and cause torrential bleeding on impact.[6]

The widespread availability of semi-automatic assault weapons has had

catastrophic effects on public safety in America. "[W]ith the invention and

commercial availability of new technologies that gave individuals or small groups

of people the power to kill large number of people in a short amount of time," the

"character of mass murder began to change."[7] There is "a growing preference for

using assault weapons and LCMs [large capacity magazines]" to perpetrate attacks,

particularly in high-fatality mass shootings.[8] Untrained and alone, a shooter armed

with an AR-15 and a few LCMs has killed seven, ten, seventeen, twenty-six

Americans. In states where AR-15s and LCMs are unrestricted, that trend will

continue unchecked.

Assault weapons and LCMs have made it feasible for amateurs to mass kill.

The urge to violence has existed throughout human history. One of the things that

has restrained it is the physical difficulty of killing another human. Assault weapon

---

[6] SPA-48, Decision on Pl. Motion for Prelim. Injunction at 48 (citing Donohue
Decl. ¶ 109); JA241-JA243, Donohue Decl. ¶¶103-110.

[7] SPA-56, Decision on Pl. Motion for Prelim. Injunction at 56 (quoting Roth Decl.
¶ 44).

[8] SPA-47, Decision on Pl. Motion for Prelim. Injunction at 47 (quoting Klarevas
Decl. ¶¶ 13-13).

technology all but eliminates that physical difficulty—and that is precisely why it is restricted by Conn. Gen. Stat. §§ 53a-202a *et seq.*

## I. THE SANDY HOOK SHOOTER'S LEGAL ACCESS TO AN AR-15 STYLE ASSAULT RIFLE AND LARGE CAPACITY MAGAZINES ENABLED HIM TO KILL TWENTY CHILDREN AND SIX EDUCATORS IN UNDER FIVE MINUTES

For his assault on Sandy Hook Elementary School the Sandy Hook shooter chose a Bushmaster AR-15, the XM15-E2S.[9] The weapon was legally purchased in Connecticut.[10] Despite the lethality of AR-15 style assault rifles and LCMs, Connecticut's then-existing assault weapons restrictions permitted the sale of the

---

[9] This was the same model weapon that had been used in the infamous "DC sniper" shootings that paralyzed the District of Columbia, Maryland, and Virginia in 2002, a decade before Sandy Hook. *See* Fox Butterfield, *Sniper Victims in Settlement with Gun Maker and Dealer*, N.Y. Times (Sept. 10, 2004), https://www.nytimes.com/2004/09/10/us/sniper-victims-in-settlement-with-gun-maker-and-dealer.html. It was also the model chosen by the Buffalo, NY Tops supermarket shooter, who wrote, "there are very few weapons that are easier to use and more effective at killing than firearms, especially the Bushmaster XM-15 I will be using," before killing ten and wounding three. *See* Cameron McWhirter & Sadie Gurman, *Accused Buffalo Gunman Described Why He Chose His Firearms, Body Armor*, The Wall Street Journal (May 16, 2022), https://www.wsj.com/livecoverage/buffalo-ny-supermarket-shooting-latest-news/card/accused-buffalo-gunman-described-why-he-chose-his-firearms-body-armor-7vfPgmLKvLEVV6oE13Cg-7vfPgmLKvLEVV6oE13Cg.

[10] *See* Office of the State's Attorney for the Judicial District of Danbury, *Report of the State's Attorney for the Judicial District of Danbury on the Shootings at Sandy Hook Elementary School and 36 Yogananda Street, Newtown, Connecticut on December 14 2012*, 2, 25, 36 (2013), https://portal.ct.gov/DCJ/Latest-News/Sandy-Hook-Investigation/Danbury-States-Attorney-Releases-Report-on-Sandy-Hook-Investigation ("State's Attorney's Report").

Bushmaster XM15-E2S and the 5.56 mm rounds[11] housed in LCMs that the shooter would use.[12] If Connecticut's now-operative assault weapons restrictions had been in effect at that time, those sales could not have taken place.[13]

     The shooter had no military or police weapons training.[14] He was not physically strong. At six feet tall, he weighed 112 pounds.[15] But armed with the AR-15, LCMs, and attack tactics learned through first-person shooter games, he unleashed torrents of bullets in seconds.[16] In the words of the weapon's manufacturer, he made the "[f]orces of opposition ... bow down."[17] He inflicted killing wounds on twenty children and six educators in just under five minutes.[18] The lethal prowess of the weapon he carried made Sandy Hook the historic tragedy that it is.[19]

---

[11] The rounds used by the shooter are sometimes also described as being .223 rounds. In fact they were 5.56 mm rounds. State's Attorney's Report at 18 n.31. Both 5.56 mm rounds and .223 rounds travel at extreme velocity and have extreme wounding functionality.

[12] *See* P.A. 01-130; *see also* State's Attorney's Report at 2, 25, 36.

[13] *See* Conn. Gen. Stats. §§ 53-202a(1)(B)-(E), 53-202b, 53-202c, 53-202w.

[14] *See* State's Attorney's Report at 28, 30-35.

[15] *Id.* at 27.

[16] *See id.* at 19-22, 25, 35-36; *see also id.* Appendix A84-A88, A118, A125-A134, A136-140 (Sandy Hook Elementary School shooting timeline, ballistics diagrams, shooter description).

[17] *See* JA-237, Donohue Decl. ¶ 93 (describing Bushmaster assault rifle slogan).

[18] *See* State's Attorney's Report at Appendix A84-A88 (timeline).

[19] It is noteworthy that only two people suffered non-lethal wounds. *See* State's Attorney's Report at 1-2.

The mass loss of life caused by an amateur shooter with an assault rifle and LCMs in Sandy Hook was no accident. The result at Sandy Hook is exactly what the AR-15's field testing proved the assault rifle design excels at. And it is exactly what mass shootings since Sandy Hook prove the technology does. On May 24, 2022 in Uvalde, Texas a young male shooter with no combat training used an assault rifle and LCMs to kill nineteen students and two teachers and wound at least seventeen others.[20] On July 4 in Highland Park, Illinois, a young male shooter with no known firearms training used an assault rifle and LCMs to kill seven and wound at least forty-seven others.[21] In Dayton, Ohio on August 4, 2019, a shooter armed with a 100 round drum magazine killed 9 and shot 17 others in just 32 seconds.[22]

---

[20] *See* U.S. Department of Justice, *Critical Incident Review: Active Shooter at Robb Elementary School*, xii (2024), https://portal.cops.usdoj.gov/resourcecenter/content.ashx/cops-r1141-pub.pdf; *see also* Texas House of Representatives Investigative Committee on the Robb Elementary Shooting, *Texas House of Representatives Investigative Committee on the Robb Elementary Shooting Interim Report 2022*, 36 (July 17, 2022), https://house.texas.gov/_media/pdf/committees/reports/87interim/Robb-Elementary-Investigative-Committee-Report.pdf.
[21] *See* NBC 5 Chicago, *Highland Park Parade Mass Shooting Victims Now Include 7 Killed, 47 Injured*, (July 5, 2022), https://www.nbcchicago.com/news/local/injuries-in-highland-park-fourth-of-july-parade-mass-shooting-rise-to-38/2873555/.
[22] JA-234, Donohue Decl. ¶ 84.

During his assault on Sandy Hook Elementary School, the shooter used only one weapon—the Bushmaster AR-15 style rifle—to attack.[23] He fired 154 5.56 mm rounds, using thirty-round magazines in taped reloads to reduce his reload time.[24] Acting alone and without military training, he was able to commit the most devastating crime in Connecticut history because of the technical attributes of his weapon.

In the words of Nicole Hockley, the mother of first-grader Dylan:

There were a lot of guns that our shooter could have chosen. He chose the AR-15 because he was aware of how many shots it could get out… that it would serve his objective of killing as many people as possible in the shortest time possible.

Connecticut's operative assault weapons restrictions now prohibit the sale of both the Bushmaster XM15-E2S and LCMs in Connecticut. Had the current version of § 53a-202a *et seq.* been in effect before Sandy Hook, the shooter's attack on the school would have been entirely thwarted, or at the very least its effectiveness would have been greatly diminished.

## II.    NO ONE CAN BRING BACK THOSE LOST AT SANDY HOOK

There were twenty-six lives taken on December 14, 2012 at Sandy Hook Elementary School.

---

[23] *See* State's Attorney's Report at 2, 5, 10.
[24] *Id.* at 17-22; Appendix A118.

**Victoria Soto**



Victoria Leigh Soto was twenty-seven on December 14, 2012, and the first-grade teacher in Sandy Hook Elementary School's classroom 10.

Vicki had known she wanted to be a teacher since she was three years old. She worked hard to get there. Attending Eastern Connecticut State University in Willimantic, she excelled and graduated with a double major in history and education. Vicki was the oldest of the four Soto children, a role model to her two younger sisters and her brother.

Once she became a teacher, Vicki always had big plans for setting up her classroom at the beginning of each school year. In what became a family tradition, she would enlist her siblings to help change the bulletin boards and arrange her classroom in fun and engaging ways. As school got rolling, her enthusiasm only grew. She would sit with her mom, Donna, on the patio cutting out letters and talking about each of her students.

11

That morning on the long drive from her home in Stratford, Vicki was blasting Christmas music. She was bringing in all the ingredients so her class could make gingerbread houses for the holidays.

Vicki died trying to protect her students.

**Daniel Barden**



Daniel Barden was – at age seven – one of the older children in classroom 8. Daniel understood things about life in a way that prompted many who knew him to call him an "old soul." Daniel was not only bright and loving; he understood what it meant to live life with compassion. He would take notice of children who sat alone and would ask to go sit with them or invite them to join an activity.

Daniel was the baby of the family, growing up in a happy little house. He got a lot of attention from his two older siblings. He giggled with his older brother and sister, keeping small secrets from their parents.

12

On the morning of the shooting, Daniel walked to the bus with his father Mark. They were talking about how they would have pizza that night, because Friday night was family pizza night. It was going to be a great Friday night.

Mark put Daniel on the bus and hugged him and kissed him and told him he loved him. He had no way of knowing it would be the last time.

**Dylan Hockley**



Dylan Hockley was six. He had a beaming smile that lit up a room and an infectious laugh. His older brother was his best friend. Dylan loved the moon, and garlic bread, and being right next to his mom, Nicole.

Dylan was a child with autism and was learning to read. He would come home every day from school proudly bearing a new book. One of the main reasons the Hockley family moved to Sandy Hook was the school's special education program. Dylan's parents had chosen Sandy Hook Elementary School for Dylan

13

because there was a strong focus on special education needs and Newtown could provide the staff and the services and the expertise to help Dylan.

The last time Dylan's father, Ian, saw him was the morning of December 14th. Ian had to be at work by seven, so he got up very early. He looked in the boys' room. They were asleep, so Ian whispered goodbye and went to work.

**Avielle Richman**



On the morning of December 14, 2012, Avielle Richman had plans to leave school early with her family and go see the Rockettes perform. Avielle wasn't supposed to be in school at all that day, but she really wanted to build gingerbread houses with her class. Avielle's mom, Jenn, says, "this girl had crazy, crazy curly hair and she had her father's smile; just half of her face was this smile, just like his. She was not at all shy…" Avielle was a lover of stories – both hearing them and telling them. "She was our only child, she was everything."

14

On the morning of the shooting, Jenn took Avielle to the bus. She got on and they blew kisses through the window to each other.

Jenn says:

I don't think you heal from something like this. I think you forever hold grief and you rebuild some joy back into your life, and it balances. And some days, on other days, one takes over the other and the other days the grief is just so awful.

**Emilie Parker**



On December 14, 2012, Emilie Parker woke up early, like she usually did. She waited until 7 a.m. to get out of her bed because that was the family rule. When her father, Robbie, poked his head into her room before leaving for work, she smiled and they exchanged good-mornings and I-love-yous in Portuguese, a language Emilie was learning from her dad. (She had begged him to teach her.)

Emilie's parents felt that she was this amazing glue and bond in their home. Each person had their unique relationship with her, including her two younger

sisters. She loved to draw and paint and wanted to open an art gallery when she grew up.

On the morning of the shooting, Emilie's mother, Alissa, took her to the bus. They had a family tradition that when the kids got on the bus, they would all turn around and wave goodbye. But that morning was rushed, and Alissa had to help another child. Emilie ran over and gave Alissa a hug and got on the bus. She didn't turn around and wave. Alissa stood there waving, waiting for her to turn and wave back, and she didn't. That was the last time Alissa saw Emilie.

**Benjamin Wheeler**



On the morning of December 14, 2012, Benjamin Wheeler, six, wasn't sure if he wanted to be an architect, a paleontologist, a lighthouse keeper – or all three at once. Ben was an avid reader and was becoming a very strong swimmer. He really hated the fact that he "was already six and hadn't lost any teeth." Each morning Ben could hardly wait to get to Sandy Hook Elementary School's classroom 8.

On the morning of the shooting, Ben's mother, Francine, drove him to school. It was about 9 o'clock and Ben was so excited to go into school that he left

the car door open. Francine told him to close the door. She doesn't remember if she said I love you, she just remembers saying close the door. She says, "That was the last thing I said to him, and then he went in."

### III. THERE SHOULD BE NO NEXT TIME

In the words of *amica* Nicole Hockley, "I do not want to be someone sharing my experience and consoling another parent next time. I do not want there to be a next time."

In the words of *amicus* Ian Hockley,

I speak for our dead son Dylan, who never stood a chance as he stared down the barrel of a military grade weapon. I cannot bring Dylan back, but together we must try to avoid the next mass shooting using these weapons and prevent many more families suffering the horrors we experienced.

In the words of *amicus* Mathew Soto,

An assault weapons ban would have saved my sister Victoria Soto. The AR-15 used in the Sandy Hook School Shooting should not have been sold to the public. This piece of legislation has and will continue to save lives in the state of Connecticut. These weapons were created for military use and still serve our military and law enforcement; they should not be sold to the public.

In the words of *amicus* David Wheeler, "I would respectfully request that every parent in this country who hears these words simply pause for a moment and think. Ask yourself, what is it worth doing to keep your children safe?"

In the words of *amica* Jillian Soto-Marino:

The Connecticut assault weapon ban is vital in ensuring that what happened to my sister never happens to another family again. The repeal of this legislation would strip back what my family as well as countless others who have lost loved ones worked to accomplish.

In the words of *amica* Jackie Barden, "We know the price of inaction."

In the words of *amicus* Mark Barden, "No one should feel the pain. No one should feel our pain or the pain felt by the tens of thousands of people who've lost loved ones to senseless gun violence."

In the words of *amica* Jennifer Hensel:

A moral imperative is truly at hand. My child died in the arms of Connecticut's purview; her blood pooling on the floor of her first-grade classroom. Her life was ended by multiple bullets to her face. I would not recognize her face, is what I was told. I knew every mark on her beautiful body. I didn't need to see her face to know what was taken from me. In response to her death, legislation was implemented enacting stricter gun legislation - an assault weapons ban. Please do not be swayed by the rhetoric of those attempting to overturn this hard-won ban. Please, do not allow more blood to soak our Connecticut soil from assault-style weapons. A fundamental duty to protect all in Connecticut is at stake.

## **CONCLUSION**

For all these reasons, *amici* request that the ruling of the District Court be affirmed.

18

Dated: July 26, 2024                    */s/ Alinor C. Sterling*
                                              Alinor C. Sterling
                                              Koskoff, Koskoff & Bieder, P.C.
                                                350 Fairfield Avenue
                                              Bridgeport, CT 06604
                                              (203) 336-4421
                                              asterling@koskoff.com
                                              Fed. Bar No. ct17207
                                              *Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the Fed. R. App. P. 32(g), I hereby certify that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4) because it contains 3,417 words as calculated by the word count feature of Microsoft Word, exclusive of sections exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it uses 14-point proportionally spaced Times New Roman font.

Dated: July 26, 2024

*/s/ Alinor C. Sterling*
Alinor C. Sterling
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
(203) 336-4421
asterling@koskoff.com
Fed. Bar No. ct17207
*Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 26, 2024 an electronic copy of the foregoing Brief of *Amici Curiae* Mark Barden, Jacqueline Barden,  Jennifer Hensel, David Wheeler, Francine Wheeler, Robert Parker, Alissa Parker, Jillian Soto-Marino, Carlos Mathew Soto, Donna Soto, Carlee Soto Parisi, Nicole Hockley, and Ian Hockley was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

Dated: July 26, 2024

*/s/ Alinor C. Sterling*
Alinor C. Sterling
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
(203) 336-4421
asterling@koskoff.com
Fed. Bar No. ct17207
*Counsel for Amici Curiae*

21